ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Plaintiff Dawn Crane ("Plaintiff") commenced this action against Defendant David J. Shulkin, Secretary of the Department of Veterans Affairs ("Defendant") on May 27, 2016, asserting violations of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). (Dkt. 1). Plaintiff alleges two adverse employment actions: (1) her inability to compete for a position to which a male employee, who is two years younger than her, was promoted; and (2) her transfer from a position in the Director's Office to a position in Human Resources ("HR"), which stifled her ability to advance her career, while younger male employees succeed. (Id. at ¶¶ 13, 18-24). Presently before the Court is Defendant's motion for summary judgment. (Dkt. 20). For the reasons that follow, Defendant's motion is granted.
BACKGROUND
I. Proceedings in this Court
Plaintiff filed her complaint in this Court on May 27, 2016. (Dkt. 1). Before filing in federal court, Plaintiff filed a charge of discrimination with the Department of Veteran's Affairs ("VA") on July 16, 2015. (Ex. M).[2] The VA's Office of Employment Discrimination Complaint Adjudication issued a decision with a right to sue on February 29, 2016. (Dkt. 1-5). Defendant filed an answer to Plaintiff's complaint on July 25, 2016. (Dkt. 7).
*355 On June 14, 2017, Defendant moved for summary judgment. (Dkt. 20). Plaintiff filed papers in opposition on September 5, 2017. (Dkt. 26). Defendant replied in support of the motion on September 19, 2017. (Dkt. 28). On December 1, 2017, this Court held oral argument on Defendant's motion for summary judgment. At the proceeding, the Court requested additional submissions from the parties regarding Plaintiff's claims arising out of her transfer from a position in the Director's Office to a position in HR. (See Dkt. 31). Defendant's motion for summary judgment did not address that claim. In requesting briefing on that issue, the Court cited Federal Rule of Civil Procedure 56(f), which allows the Court to grant summary judgment on grounds not raised by a party after "giving notice and a reasonable time to respond." Defendant submitted an additional filing on December 21, 2017. (Dkt. 32). Plaintiff submitted a response on February 8, 2018 (Dkt. 35), and Defendant replied on February 22, 2018 (Dkt. 37).
II. Factual Background
A. Complaint
Plaintiff, a female born in 1961 who is employed at the Canandaigua VA Medical Center ("CVAMC"), brought this action asserting violations of Title VII and the ADEA. (Dkt. 1). She alleges that she experienced discrimination on the basis of her gender and age when, on April 1, 2015, she became aware that a former coworker, John Fiero ("Fiero"), a man born in 1963, was non-competitively promoted to the position of Secretary, GS-9. (Def. Stmt. at ¶¶ 1, 3-5; Pl. Stmt. at ¶¶ 1, 3-5).[3] Plaintiff also alleges that her transfer from a position in the Director's Office to a position in HR was an adverse employment action that resulted from the discrimination she experienced. (Dkt. 1 at ¶¶ 18-24).
In Plaintiff's "statement of claims" within her complaint, she alleges:
Defendant has engaged in unlawful employment practices in violation of Title VII ... and more specifically, gender discrimination, by unlawfully favoring male candidates for positions for which Plaintiff, a female, was better qualified as compared to the successful male candidate. Defendant also engaged in unlawful age based discrimination in violation of [the ADEA] ... insofar as the male candidates whom Defendant selected for positions/promotions over Plaintiff were younger, and further, that said practice followed a pattern of disparate treatment of VA employees based on age.
(Id. at ¶ 12). She continues:
More specifically, Plaintiff was discriminated against on the basis of age (54 at the time, DOB: 07/1961) and sex (female) when, on April 1, 2015, Plaintiff became aware that a former coworker (male) whom Plaintiff not only was more qualified than, but whom she had trained, was noncompetitively promoted to the position of Secretary, GS-9, while the Complainant was denied the opportunity to even compete for the position.
(Id. at ¶ 13). Plaintiff also claims:
In addition to the foregoing, while Plaintiff was employed in the Director's office as a Secretary, she participated in the hiring process and training of no fewer than 3 younger males (including [Fiero] ) all of whom were GS-7 at the time of hiring, but who, upon information and belief, all surpassed Plaintiff in seniority since being hired in the Director's Office *356 at the [C]VAMC.... All three male individuals reported to Plaintiff when they were hired, but have since all been promoted while Plaintiff has languished at the VA in a career that has been stagnant in terms of promotions, unlike these male counterparts.
(Id. at ¶¶ 16-17). According to Plaintiff, she was transferred laterally within the VA from her position in the Director's Office to a position in HR, and two members of CVAMC management told her that she had "outgrown" her position in the Director's Office. (Id. at ¶¶ 18-19). Plaintiff also claims that "throughout her employment at the VA, males with social ties to management have been favorably influenced in terms of promotion decisions, on a routine basis, as respects the males who participated in such male fraternization." (Id. at ¶ 30).
B. Summary Judgment Evidence
The following facts are taken from Defendant's Statement of Material Facts Not in Dispute (Dkt. 20-2), Plaintiff's affidavit in response (Dkt. 26-1), and the exhibits submitted by the parties (Dkt. 20-3; Dkt. 20-4; Dkt. 20-5; Dkt. 20-6; Dkt. 20-7; Dkt. 20-8; Dkt. 20-9; Dkt. 26-2; Dkt. 26-3; Dkt. 26-4; Dkt. 26-5; Dkt. 26-6). The facts set forth below are undisputed, unless otherwise noted.
Plaintiff is a current employee at the CVAMC as an HR Assistant, a GS-7 position. (Def. Stmt. at ¶ 3; Pl. Stmt. at ¶ 3). She started working at the VA in 2001 as a patient services assistant performing secretarial work. (Def. Stmt. at ¶ 7; Pl. Stmt. at ¶ 7). During her employment at the VA, Plaintiff has held multiple administrative support positions. (Def. Stmt. at ¶ 8; Pl. Stmt. at ¶ 8).
1. Plaintiff's Transfer to Human Resources
In April 2012, Plaintiff was selected for a position in the CVAMC Director's Suite as an Administrative Support Assistant. (Def. Stmt. at ¶ 9; Pl. Stmt. at ¶ 9). Plaintiff was then detailed from her position in the Director's Office to HR on June 9, 2014. (See Def. Stmt. at ¶ 25; Pl. Stmt. at ¶ 25). Her detail to HR was extended multiple times until December 14, 2014, when her assignment to HR became permanent. (Def. Stmt. at ¶ 34; Pl. Stmt. at ¶ 34). The parties dispute the reason for the transfer to HR. Defendant argues that HR was in need of additional assistance, the Director was dissatisfied with Plaintiff's performance, and Plaintiff had failed to schedule employee awards as directed. (Def. Stmt. at ¶¶ 27, 29-30; Pl. Stmt. at ¶¶ 27, 29-30 (denying these allegations) ). Plaintiff alleges, without citing any support in the record, that the Director never expressed dissatisfaction with her, that someone else was responsible for employee awards, and that the reason for her transfer to HR was that she had "outgrown the front office." (Pl. Stmt. at ¶¶ 27, 29-30).
2. Promotion of John Fiero
Fiero was promoted to a GS-9 secretary position as of June 29, 2014. (Dkt. 20-5, at ¶ 6; Ex. I (Notification of Personnel Action) ). Fiero was promoted from a GS-9 position to a GS-11 position effective July 12, 2015. (Ex. N (Notification of Personnel Action) ).
According to her complaint, "on April 1, 2015"-approximately nine months after Fiero's promotion-"Plaintiff became aware that a former coworker (male) whom Plaintiff not only was more qualified than, but whom she had trained, was noncompetitively promoted to the position of Secretary, GS-9, while the Complainant was denied the opportunity to even compete for the position." (Dkt. 1 at ¶ 13; see also Dkt. 1 at ¶ 27 ("On April 1, 2015, as stated above, Plaintiff discovered that [Fiero] had been promoted to GS-9 pay grade and that he had been 'selected/appo *357 inted' to the position of Secretary ....") ).
On April 22, 2015, Plaintiff made an initial contact with the VA's Office of Resolution Management ("ORM") regarding alleged discrimination. (Def. Stmt. at ¶ 67; Pl. Stmt. at ¶ 67; Ex. K (letter from Equal Employment Opportunity ("EEO") counselor in ORM confirming Plaintiff's complaint made on April 22, 2015, and summarizing the claim as alleging that "as of 04/01/15, [Crane] was reassigned to another area" based on "age" and "gender"); Ex. L (letter from EEO Counselor closing matter that Crane initiated on April 22, 2015) ). In her initial contact, Plaintiff asserted that her reassignment to HR was discriminatory. (Def. Stmt. at ¶ 69; Pl. Stmt. at ¶ 69). Attaching as exhibits two letters from an EEO counselor, who summarized Plaintiff's initial complaint as one concerning her reassignment (Def. Stmt. at ¶ 70; see Ex. L; Ex. K), Defendant claims that "[i]n her initial contact, Plaintiff did not allege that she was discriminated against when [Fiero] was promoted from a GS-7 to a GS-9 position." (Def. Stmt ¶ 70). Plaintiff denies this assertion, without elaboration; she cites to "exhibit 1 VA form 4939 Complaint of Employment Discrimination." (Pl. Stmt. ¶ 70). Plaintiff's VA form 4939 Complaint is dated July 16, 2015, and states as follows:
I was taken out of my position as Admin. Support Assistant to the Director's Office and detailed 2 back to back times. At the end of the detail, I was reassigned to my current position in Human Resources. During the detail, I was replaced by a younger Male coworker from the same office. This coworker was hired while I was in the Director's Office, I trained this person and this person reported to me. Subsequently, my replacement has received a new job title and an increase to an increase to a GS09.
Shortly before filing my discrimination complaint with EEO, I discovered that I had been discriminated against in employment on the basis of gender and age.
(Ex. M (emphasis added) ). The date of the alleged occurrence was "4/1/15." (Id. ).
In her deposition, Plaintiff was asked when she learned that Fiero had been promoted from GS-7 to GS-9. (Dkt. 20-7 (Crane Dep. Tr.) at 58). She answered, "It was after I was in HR, I'm trying to think when it was. I truly cannot remember the exact date. When I found out it was-it was brought to my attention by another HR employee." (Id. ). She identified Cheryl Perron ("Perron") as the HR employee who told her about Fiero's promotion and specified that Perron verbally informed Plaintiff that Fiero "had been promoted to a-I think at the time it was a GS-11, that he had been promoted to an 11 at that time." (Id. at 58-59). Plaintiff also confirmed that Perron was the only person (other than her spouse and her attorney) with whom she had spoken about Fiero's promotion. (Id. at 60). When Plaintiff was asked if she had "prior knowledge that [Fiero] had been promoted from a 7 to a 9," she answered, "No, I did not," and reiterated that Perron had told her about Fiero's promotion from a GS-9 to a GS-11 position. (Id. at 61). In her statement of undisputed facts, Plaintiff now denies her deposition testimony stating that she did not have prior knowledge of Fiero's promotion from a GS-7 to a GS-9, and claims, without citing any evidence, that "[m]y initial complaint to ORM and VA form 4939 both state Mr. Fiero's increase." (Pl. Stmt. at ¶ 80).
Perron has submitted a declaration in which she states that she does "not remember telling Plaintiff that Mr. Fiero was promoted or having any conversation(s) with her about his work status,"
*358 and, "[t]o the best of [Perron's] recollection, [she] did not tell Ms. Crane that Mr. Fiero was promoted to a GS 9 or GS 11 position on or about April 2015." (Dkt. 20-6 at ¶¶ 4-5).
Plaintiff's initial contact with ORM on April 22, 2015, occurred 297 days after Fiero's promotion to GS-9, and 129 days after Plaintiff's re-assignment to FIR. (Def. Stmt. at ¶¶ 73-74; Pl. Stmt. at ¶¶ 73-74). On July 8, 2015, ORM sent Plaintiff a letter notifying her that informal counseling was closed, and that she could file a formal complaint of discrimination using a VA Form 4939 within 15 days of receiving the letter. (Ex. L (ORM Letter dated 7/8/15) ). As discussed, Plaintiff did file a formal complaint on July 16, 2016, which mentioned Fiero's promotion to GS-9. (Ex. M). Plaintiff affirms Defendant's statement, set forth in Defendant's Statement of Material Facts Not in Dispute, that "Plaintiff's formal discrimination complaint ... recast her allegations to focus on Fiero's promotion." (Def. Stmt. at ¶ 76; Pl. Stmt. at ¶ 76).
3. Exhaustion of Administrative Remedies
Plaintiff stated in her deposition before the EEO investigator that she was aware of the VA's discrimination policy. (Dkt. 32-2 at 6). She testified that she had received a copy of the policy as a new employee, had access to the policy via "Share Point," and had handled the policy while working in the Director's Office. (Id. ). Plaintiff further testified that she was aware that the policy requires an employee to bring discrimination complaints to the attention of the EEO officer. (Id. ). Plaintiff does not dispute that testimony.
DISCUSSION
I. Standard of Review for Motion for Summary Judgment
Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. Scott v. Harris , 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial ." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec., 475 U.S. at 586-87, 106 S.Ct. 1348 ). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Defendant did not, in its initial motion for summary judgment, raise an argument with respect to Plaintiff's claims arising out of her lateral transfer to HR. Instead, Defendant stated, in a footnote, that "Plaintiff appears to misconstrue the nature of the adverse employment action at issue in this lawsuit," and "the allegedly adverse employment action is the decision to promote Mr. Fiero to a higher grade pursuant to VRA policy." (Dkt. 28 at 3 n.1). At oral argument, the Court informed the parties that it construes Plaintiff's complaint as raising claims arising out of both Fiero's promotion and Plaintiff's transfer to HR and asked for additional briefing on the transfer claim.
*359 Under Rule 56(f), "[a]fter giving notice and a reasonable time to respond," the Court may "grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f)(2) ; see also Nick's Garage, Inc. v. Nationwide Mut. Ins. Co., No. 15-1445-CV, 715 Fed.Appx. 31, 34, 2017 WL 5171217, at *2 (2d Cir. Nov. 8, 2017) (stating that Rule 56(f)(2)"expressly allows the court to grant a motion for summary judgment on grounds that were not raised in the motion, but only after giving the opposing party notice and the opportunity to oppose" and collecting cases). At oral argument, the Court requested additional briefing addressing that claim, and the parties filed supplemental submissions. (Dkt. 32; Dkt. 35; Dkt. 37). Accordingly, Plaintiff has received an opportunity to respond, and the Court may properly consider granting summary judgment on the transfer claim.
II. Whether Plaintiff Failed to Timely Exhaust Administrative Remedies
A. Exhaustion Requirements
Equal Employment Opportunity Commission ("EEOC") regulations provide that federal employees "who believe they have been discriminated against on the basis of sex ... [or] age ... must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a) ; accord Smith v. Colvin, 574 Fed.Appx. 55, 55 (2d Cir. 2014). The regulations further provide that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "The 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." Fitzgerald v. Henderson , 251 F.3d 345, 359 (2d Cir. 2001) ; see also Smith, 574 Fed.Appx. at 56 ("Because the prescribed filing period is similar to a statute of limitations, that period is additionally subject to waiver, estoppel, and equitable tolling.").
This 45-day period may be extended where the
individual shows that ... she was not notified of the time limits and was not otherwise aware of them, that ... she did not know and reasonably should not have ... known that the discriminatory matter or personnel action occurred, that despite due diligence ... she was prevented by circumstances beyond ... her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.
29 C.F.R. § 1614.105(a)(2). "The burden of demonstrating the appropriateness of equitable tolling ... lies with the plaintiff." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).
"If the matter is not resolved after a mandatory counseling period, the employee may then file a formal written administrative complaint with the EEOC, which must be filed within fifteen days of the EEO Counselor's final interview with the employee. The employee may not file in federal court until the administrative EEO process has been completed." Lucenti v. Potter, 432 F.Supp.2d 347, 357 (S.D.N.Y. 2006) (citing 29 C.F.R. §§ 1614.106(a), (b), 1614.407 ). "Courts must strictly adhere to such procedural requirements for gaining access to the federal courts. These timing requirements, though not jurisdictional, 'are not to be disregarded by courts out of a vague sympathy for particular litigants.' " Id. (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ).
*360 1. Claim Based on Fiero's Promotion
Defendant argues that Plaintiff did not timely exhaust her Title VII and ADEA claims as required by the regulations. (Dkt. 20-1 at 14-16). Defendant argues that "[t]he record evidence establishes that Plaintiff's allegation that she became aware of the allegedly illegal discrimination on April 1, 2015 is false." (Id. at 14). "Ms. Crane's informal complaint raised in her April 22, 2015 contact with the VA's ORM alleged that she was discriminated against when she was permanently transferred to HR," but her "informal complaint was silent as to Mr. Fiero's promotion to a GS-9 position." (Id. at 14-15). Defendant contends that after Plaintiff engaged in mediation during which she learned that her claim based on her transfer to HR was outside the applicable 45-day limitations period, she "then filed a formal complaint in which she recast her complaint to allege that on April 1, 2015, she 'became aware' that [Fiero] was promoted to a GS-9 position in the Director's Suite." (Id. at 15). Defendant points to Plaintiff's deposition testimony, where she "testified under oath that she does not remember when she learned about Mr. Fiero's GS-9 promotion," but recalled that "her co-worker, Cheryl Perron, told her that Mr. Fiero had been promoted to a GS-11-not a GS-9-position around the time of his second promotion, which took effect on July 12, 2015." (Id. ). In Defendant's view, because Plaintiff's initial contact with ORM occurred 81 days before Fiero's GS-11 promotion on July 12, 2015, "based on her own best recollection, Ms. Crane did not know when she contacted ORM on April 22, 2015 that Mr. Fiero had been promoted to a GS-9 position. Her sworn testimony establishes she did not learn of his advancements until months after initiating her discrimination claim." (Id. at 16).
Plaintiff's memorandum of law in opposition to Defendant's summary judgment motion does not address Defendant's exhaustion argument. (See Dkt. 26 at 17-24). Instead, she addresses the exhaustion issue through her attempt to dispute Defendant's statement of undisputed facts and set forth her own statement of undisputed facts. (Id. at 1-16). First, she asserts that she learned about Fiero's promotion to GS-9 on April 1, 2015; in support, she cites her deposition transcript, but the cited portions of her deposition transcript reveal nothing about when she learned of Fiero's promotion to GS-9. (Id. (citing Crane Dep. at 77 (testimony confirming her contention "that Mr. Fiero was promoted from a GS-7 to a GS-9 based on animosity against [her] because of [her] gender"), 99 (testimony alleging that another coworker, Matt Cokley, was given a promotion but she was not afforded the same opportunity) ). Likewise, when disputing Defendant s statement that her initial contact with the EEO Counselor did not mention Fiero's promotion to GS-9, Plaintiff cites to "exhibit 1 VA form 4939 Complaint of Employment Discrimination," (Pl. Stmt. at ¶ 70), but that formal complaint does not state when Plaintiff learned of Fiero's promotion.
2. Claim Based on Transfer to HR
With respect to Plaintiff's claim based on her transfer to HR, Defendant contends that Plaintiff was informed by written memo on or about October 29, 2014, that she would be permanently transferred to HR. (Dkt. 32 at 5). Plaintiff contacted the ORM on April 22, 2015, 129 days after the transfer occurred, alleging that she was discriminated against when she was permanently transferred. (Id. ). According to Defendant, Plaintiff therefore failed to timely and fully exhaust her administrative remedies.
In Plaintiff's additional filing submitted after oral argument, she does not appear to dispute that her complaint was not timely initiated. Rather, she argues that she is *361 entitled to invoke one or more of three exceptions to the 45-day limitations period. (Dkt. 35 at 18-22). Confusingly, Plaintiff's arguments regarding those exceptions seem to focus on her claims based on Fiero's promotion. Even so, the Court will consider whether an exception to the 45-day period applies to excuse Plaintiff's untimeliness with respect to any of her claims. The Court concludes that none of the three exceptions apply.
As previously stated, the regulatory exception applies in the following circumstances:
when the individual shows that ... she was not notified of the time limits and was not otherwise aware of them, that ... she did not know and reasonably should not have ... known that the discriminatory matter or personnel action occurred, that despite due diligence ... she was prevented by circumstances beyond ... her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency....
German v. Pena, 88 F.Supp.2d 216, 220 (S.D.N.Y. 2000) (emphasis added) (quoting 29 C.F.R. § 1614.105(a)(2) ). According to Plaintiff, the regulatory exception applies here because the agency accepted her Complaint and formalized it ... and because she was prevented from filing earlier through no fault of her own, but because she only discovered that her male underling was promoted to GS09 in the position he replaced her at in the Director's office." (Dkt. 35 at 20).
Equitable tolling can warrant waiver of the 45-day time requirement for filing when the plaintiff's failure to meet a deadline is the result of someone else's error." German, 88 F.Supp.2d at 221. Equitable tolling may be available when
(1) the claimant actively pursued her judicial remedies in the prescribed time period, (2) she was induced or tricked by her adversary's misconduct into allowing the deadline to pass, (3) the court leads a plaintiff to believe that she has done all that is required, (4) the plaintiff has received inadequate notice, or (5) when a motion for the appointment of counsel is pending.
Dillard v. Runyon, 928 F.Supp. 1316, 1325 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (2d Cir. 1997) (internal citation omitted). Plaintiff argues that she learned about the discrimination shortly before filing, and fewer than 45 days prior to filing her complaint. (Dkt. 35 at 20). Therefore, she contends, Defendant failed to inform her of the discrimination, and her failure to meet the deadline was the result of someone else's error. (Id. ).
Finally, Plaintiff argues that equitable estoppel provides relief from the timing requirement. (Id. at 21). Equitable estoppel is similar to equitable tolling, but "is raised in cases where the plaintiff knew of a potential cause of action but delayed bringing it because of the defendant's conduct." German, 88 F.Supp.2d at 222. "The doctrine properly may be invoked in a case in which the employer has misrepresented the length of the limitations period or in some other way has lulled the plaintiff into believing that it was not necessary for him to commence litigation." Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 61 (2d Cir. 1986) (internal quotation marks omitted). According to Plaintiff, equitable estoppel applies in this case because Defendant refused to allow Plaintiff to compete for the position, and because she only discovered that Fiero had been promoted shortly before filing her complaint. (Dkt. 35 at 21).
Defendant responds that Plaintiff has failed to show either a misrepresentation upon which she relied, as is required for equitable estoppel, or affirmative misconduct on the part of Defendant, as is *362 required for equitable tolling to apply.[4] (Dkt. 37 at 4). Defendant denies Plaintiff's claims that the employment decisions at issue in this case were discriminatory and argues that Plaintiff cannot suggest that Defendant misled her by failing to inform her of nonexistent discrimination. (Id. ).
B. Application
The record evidence supports Defendant's assertion that Plaintiff could not have known about Fiero's promotion from GS-7 to GS-9 as of April 1, 2015, in contrast to what is alleged in her complaint. By Plaintiff's own admission, she learned about Fiero's promotion from Perron and no other source; Perron told Plaintiff about Fiero's promotion to GS-11, not to GS-9; and Fiero was promoted to GS-11 on July 12, 2015, months after April 22, 2015, when Plaintiff made an initial contact to the counselor as required by 29 C.F.R. § 1614.105(a). Moreover, letters from the EEO Counselor confirming Plaintiff's initial contact summarize her claim as arising only out of her reassignment to HR, not out of Fiero's promotion and her alleged inability to compete for his position. (See Ex. K; Ex. L). Although Plaintiff attempts to use her statement of undisputed facts to deny her deposition testimony about when she learned of Fiero's GS-9 promotion through Perron, this is impermissible:
[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial.
Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (internal quotation marks and citations omitted).
Plaintiff likewise failed to timely exhaust her administrative remedies with respect to her claim arising out of her lateral transfer from the Director's Office to HR. The parties do not dispute the following:
(1) Plaintiff was detailed from her position in the Director's Office to HR on June 9, 2014. (See Def. Stmt. at ¶ 25; Pl. Stmt. at ¶ 25).
(2) Her detail to HR was extended multiple times until December 14, 2014, when the assignment to HR became permanent. (Def. Stmt. at ¶ 34; Pl. Stmt. at ¶ 34).
(3) Plaintiff made her initial contact with the VA's Office of Resolution Management regarding an alleged discrimination complaint on April 22, 2014, and the complaint concerned her "reassignment to another area." (Def. Stmt. at ¶¶ 67-68; Pl. Stmt. at ¶¶ 67-68; see also Ex. K; Ex. L).
*363 Plaintiff initially complained of her transfer to HR on April 22, 2014, which was 129 days after the transfer became permanent and is far outside the 45-day window required by 29 C.F.R. § 1614.105(a)(1).
Plaintiff's argument that an exception to the exhaustion requirement applies fails; Plaintiff is not excused from the 45-day limitations period with respect to her claims arising out of Fiero's promotion or her lateral transfer to HR and she has therefore failed to timely exhaust her administrative remedies with respect to those claims. Defendant is correct that Plaintiff has not established that any misrepresentation or misconduct by Defendant prevented her from timely filing her complaint. Furthermore, by Plaintiff's own admission, she was aware of the policy and the time limit for bringing a claim for discrimination.
III. Even if Exhausted, Plaintiff Cannot Prevail on Her Claims
A. Standard
Discrimination claims under Title VII and the ADEA are governed by a three-step burden shifting analysis. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ; Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107-110 (2d Cir. 2010) (applying McDonnell Douglas framework in ADEA case). Plaintiff bears the initial burden of proving a prima facie case by a preponderance of the evidence by establishing that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position for which [s]he applied; (3) [s]he was denied the position; and (4) the denial occurred under circumstances giving rise to an inference of discrimination." Ruszkowski v. Kaleida Health Sys., 422 Fed.Appx. 58, 60 (2d Cir. 2011). If Plaintiff can establish a prima facie case of discrimination, the burden of production shifts to Defendant to demonstrate "a legitimate, non-discriminatory reason for its decision not to hire" her. Id. "The burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext for an impermissible motivation." Id.
B. Analysis
1. Claims Arising out of Fiero's Promotion
Even if Plaintiff had properly exhausted her claims of age and sex discrimination arising out of her inability to compete for the position to which Fiero was promoted, and assuming that Plaintiff met her burden to establish a prima facie case, summary judgment is appropriate. No genuine dispute of material fact exists with respect to Defendant's legitimate, non-discriminatory reasons for promoting Fiero to the GS-9 position, and Plaintiff cannot establish that the proffered reason was a pretext for age or sex discrimination.
Defendant's legitimate, non-discriminatory reasons for promoting Fiero to the GS-9 position are as follows. First, Fiero, a veteran, was hired into the position under a special appointment authority known as the Veteran's Recruitment Appointment Authority ("VRA"), which "is an excepted hiring authority that enables career appointments of veterans without competition, i.e., the position is not posted. VRA appointments do not require candidates to complete competitive interviews." (Def. Stmt. at ¶¶ 21-22, 40; Pl. Stmt. at ¶¶ 21-22 (affirming Def. Stmt. at ¶¶ 21-22), 40 (neither confirming nor denying based on lack of knowledge); see also Ex. E at 11 (Recruitment and Selection Guide describing VRA) ). The VA strives to hire qualified veterans when it can, (Def. Stmt. at ¶ 41; Pl. Stmt. at ¶ 41 (neither confirming nor denying based on lack of knowledge); see also Dkt. 20-9 (Crouse Dep. at 8) ), and FIR Director Donna Crouse ("Crouse")
*364 confirmed Fiero's eligibility to be hired under the VRA. (Def. Stmt. at ¶ 43; Pl. Stmt. at ¶ 43 (neither confirming nor denying based on lack of knowledge); see also Dkt. 20-9 (Crouse Dep. at 12) ). Plaintiff is not a veteran and was ineligible for this type of appointment. (Def. Stmt. at ¶ 48; Pl. Stmt. at ¶ 48 (affirming non-veteran status and ineligibility for VRA appointment) ).
Second, Fiero was, in the eyes of the VA, more qualified for the position than Plaintiff. Crouse testified that he had "many years of experience in a much higher [management] level. He's been in management positions both in the military and other experience before he came to the VA." (Def. Stmt. at ¶ 45; Pl. Stmt. at ¶ 45 (neither confirming nor denying based on lack of knowledge) ). His resume confirms that he held a number of supervisory positions, including, for example, a Sergeant Major/Administrative Chief in the United States Marine Corps, where he managed a large staff and budgets. (Fiero Decl., Ex. 1). Plaintiff denies Defendant's assertion that she had "no past management experience," (Def. Stmt. at ¶ 49), contending (without pointing to any supporting evidence) that "[s]he and her husband owned and operated 2 different businesses in Geneva successfully for approx. 15 years. One business employed over 7 employees." (Pl. Stmt. at ¶ 49). Crouse testified that "it wasn't required to be a manager tor this position that Mr. Fiero was in, but he does have higher qualifications and more leadership and management experience than [Plaintiff] does." (Dkt. 20-9 (Crouse Dep. at 25) ).
Based on the foregoing, there is no issue of material fact with respect to Defendant's legitimate, non-discriminatory reasons for promoting Fiero. Although Plaintiff's statement of disputed facts is rife with paragraphs claiming that she lacks knowledge and cannot confirm or deny the allegations, that is insufficient to create a genuine dispute as to those allegations because, under Local Rule of Civil Procedure 56(a)(2), "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." L.R. Civ. P. 56(a)(2) (emphasis added).
Finally, Plaintiff's opposition in response to summary judgment does not address Defendant's legitimate, non-discriminatory reasons for Fiero's promotion or specifically explain why those reasons are pretext for age or sex discrimination. (See Dkt. 26 at 17-24). Her memorandum in opposition recites the fact that she needs to "present sufficient evidence that a rational jury could find that the employer's asserted reason for the adverse action is false. (Id. at 22). But, as far as analysis, she merely states the following with respect to gender discrimination:
Plaintiff has made out a prima facie case of gender discrimination insofar as less qualified males were allowed to rocket over her to a career in positions with upward mobility and actual promotions. Plaintiff's career, meanwhile, stagnated at a Grade 7, where she remains, at a position with no possibility of upward mobility.
(Id. at 23). As to age discrimination, she does not address the legitimate, non-discriminatory reasons that Defendant proffers. (Id. at 20-21). Accordingly, summary judgment is warranted in favor of Defendant as to the claims arising out of Fiero's promotion.[5]
*365 2. Claims Arising out of Transfer to HR
Summary judgment is also warranted with respect to Plaintiff's claims arising out of her transfer to HR. The undisputed facts establish that Defendant had a legitimate, non-discriminatory reason for the transfer, and Plaintiff has produced no evidence that the proffered reason was a pretext for age or sex discrimination. At the time of Plaintiff's transfer to HR, the HR department required additional staff. (Def. Stmt. at ¶ 28; Dkt. 20-9 (Crouse Dep. at 46-47); Pl. Stmt. at ¶ 45 (neither confirming nor denying based on lack of knowledge) ). The Medical Center Director Howard Craig also recognized a need to include more skilled administrative staff in the Director's Office. (Def. Stmt. at ¶ 37; Pl. Stmt. at ¶ 37 (neither confirming nor denying based on lack of knowledge) ). It is undisputed that Plaintiff received a performance evaluation for the period between October 1, 2012, and September 30, 2013, that suggested that Plaintiff "struggles with some of the more 'routine' issues, such as recording of minutes and nursing proficiencies" and could improve in "completion of routine tasks." (Def. Stmt. at ¶¶ 19-20; Pl. Stmt. at ¶¶ 19-20). Plaintiff puts forth no evidence to suggest that her transfer was not based on legitimate, non-discriminatory reasons, or that those reasons were pretextual. Accordingly, summary judgment is warranted in favor of Defendant as to the claims arising out of Plaintiff's lateral transfer to HR.
CONCLUSION
For the foregoing reasons. Defendant's motion for summary judgment (Dkt. 20) is granted and Plaintiff's claims are dismissed with prejudice. The Clerk of Court is directed to close this case.
SO ORDERED.

Exhibits designated by letters are the exhibits attached to Defendant's Statement of Material Facts Not in Dispute. (Dkt. 20-3; Dkt. 20-4; Dkt. 20-5; Dkt. 20-6; Dkt. 20-7; Dkt. 20-8; Dkt. 20-9).

"Def. Stmt." refers to Defendant's Rule 56 Statement of Material Facts Not in Dispute. (Dkt. 20-2). "Pl. Stmt." refers to Plaintiff's affidavit setting forth her response to Defendant's statement of undisputed facts. (Dkt. 26-1).

Plaintiff argues that Defendant has waived its right to argue that Plaintiff's claim should be dismissed for failure to exhaust because the agency accepted and formalized Plaintiff's complaint. (Dkt. 35 at 20). The Court agrees with Defendant that Plaintiff's argument lacks legal authority. A government agency does not waive a defense of failure to timely exhaust administrative remedies by accepting and investigating a complaint. Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001). To conclude otherwise "would vitiate any incentive for government agencies to investigate and voluntarily remedy instances of discrimination, lest the agencies risk forfeiting a valid defense to a potential suit. Id. at 387. A timeliness objection is waived only where an agency makes a specific finding that the claimant's submission was timely. Lanham v. Mansfield, 400 Fed.Appx. 609, 611 (2d Cir. 2010). That is not the case here.

Defendant also points out that an age discrimination claim cannot lie where the comparison employee is only slightly younger than the plaintiff. (Dkt. 20-1 at 13). "In the age-discrimination context, such an inference [of discrimination on the basis of age] cannot be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Here, Plaintiff was born xxxx xx, 1961 (Def. Stmt. at ¶ 5; Pl. Stmt. at ¶ 5), while Fiero was born in 1963 (Det. Stmt. at ¶ 21; Pl. Stmt. at ¶ 21). Thus, there is an age gap of less than three years between Plaintiff and Fiero.